# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

RONNIE LEE HAMMONDS,

           Plaintiff,

v.                              CIVIL ACTION NO. 3:18-1377

KIM WOLFE, former Superintendent of Western Regional
Jail and Correctional Facility;
PRIMECARE MEDICAL OF WEST VIRGINIA, INC.;
SUSIE CHRISTIAN, LPN, Employee of PrimeCare;
JOHN/JANE DOE CORRECTIONAL OFFICERS; and
JOHN/JANE DOE PRIMECARE EMPLOYEES,

           Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is former Defendant Joe Wood and Defendant Kim Wolfe's Motion to Dismiss Plaintiff's First Amended Complaint. ECF No. 50. After the motion was filed, the parties stipulated to a voluntary dismissal of Defendant Wood and Plaintiff's claim for injunctive relief. ECF No. 58. Therefore, the Court **DENIES** the motion **AS MOOT** with respect to those claims. Upon consideration of the remainder of the motion as to Defendant Wolfe, the Court **DENIES** the motion for the following reasons.

## I.
## FACTUAL ALLEGATIONS

In his First Amended Complaint, Plaintiff Ronnie Lee Hammonds alleges deliberate indifference to his health and safety, as well as his serious medical needs, while he was a pretrial detainee at the Western Regional Jail and Correctional Facility (WRJCF) in Barboursville, West Virginia. Plaintiff asserts that, due to well-documented overcrowding and

staff shortages, he was subjected to cruel and unusual punishment in violation of the Fourteenth Amendment of the United States Constitution, as well as violations of state regulations. Specifically, Plaintiff states that he was incarcerated at the WRJCF in or about the summer of 2017. Initially, Plaintiff was one of four inmates housed in a two-person cell. As the cell only contained two beds, he was forced to sleep on the concrete floor without any mat. Although Plaintiff was given a blanket, he states he was not given basic hygiene products such as a toothbrush. Additionally, Plaintiff claims that he and his cellmates often went days without any toilet paper.

Plaintiff further claims that, although he denied being suicidal, he was placed on suicide watch on or about September 9, 2017, for approximately one week. As a result, Plaintiff was moved to a small, two-person cell in Pod A-5 at the facility. Inmates placed in these cells are only allowed to leave for approximately one-half hour a day to shower and make phone calls. They are not permitted to have their possessions or reading or writing material, and they do not have access to electronic kiosks to make requests. Without writing material or access to the kiosks, Plaintiff claims it is impossible for inmates to file grievances.

Plaintiff also claims that, when he was moved to Pod A-5, he was stripped of his clothing and only was given a lightweight smock to wear. As the cell already housed two inmates, Plaintiff again was forced to sleep directly on the concrete floor but, this time, without any blanket. Despite being deemed suicidal, he did not speak to any mental health provider for the first three days of the watch, and he was never provided any meaningful health treatment.

In addition to those on suicide watch, Pod A-5 houses inmates subject to punitive and/or administrative segregation and several inmates with severe untreated mental illness who are separated from the general population. According to Plaintiff, several of the inmates with mental illness routinely smear feces and urine in their cells, and the cells are not cleaned for long time periods. His cell, together with other cells, also had black mold growing on the walls and ceiling. Compounding this unsanitary condition, Plaintiff claims that sometimes the inmates on the second tier of Pod A-5 set off the sprinkler system to protest conditions. When this happens, the water, which Plaintiff states contains fire retardant, mixes with the feces, urine, and black mold and flows into the bottom tier of the Pod where Plaintiff was housed. Plaintiff claims that there was approximately one inch of contaminated standing water on the floor of his cell where he slept. Plaintiff asserts he made multiple requests to have the cell cleaned, but it was never done and he was not given supplies so he could clean it himself.

Additionally, Plaintiff claims that one night, while sleeping on the filth-laden floor, he was bitten by a spider or some other insect on his right leg, which resulted in a large painful welt by morning. Although Plaintiff was known to be immunocompromised and made repeated requests for assistance to correctional officers and a nurse, he did not receive any medical attention. Without access to a kiosk or writing material, Plaintiff could not submit a "sick call slip" to have his leg evaluated. Plaintiff claims his leg became redder and more swollen with each passing day.

After spending a week housed in Pod A-5, Plaintiff was moved to a different unit. By that time, Plaintiff maintains he was very sick, had a fever, and was unable to walk. After Plaintiff and other inmates pleaded with a correctional officer to get him medical attention,

Plaintiff was taken to the medical unit. After being examined at the medical unit, Plaintiff was transported to a local hospital on September 17, 2017. At the hospital, Plaintiff was diagnosed with Methicillin-resistant Staphylococcus aureaus (MRSA) septicemia, secondary to a septic right knee, and fungemia, a blood infection. Plaintiff underwent multiple surgeries and remained in the hospital until October 18, 2017. Plaintiff states he continues to suffer both physical and emotional pain and lymphedema of his right leg.

With regards to the specific claims against Defendant Wolfe, Plaintiff asserts he was the Superintendent of the WRJCF at all relevant times and, as such, "was vested with executive authority and responsibility for the safe staffing, administration, operation, and control of WRJCF, including the oversight of all WRJCF employees and the authority to promulgate, amend, and implement all policies and procedures within WRJCF to ensure constitutional confinement and treatment of those individuals incarcerated within." *First Am. Compl.*, at ¶5, in part, ECF No. 34. In Count One, Plaintiff claims that Defendant Wolfe and others violated his Fourteenth Amendment right to due process "to be free of punishment as a pretrial detainee, by denying him the minimal civilized measure of life's necessities, resulting in Plaintiff's pain and suffering." *Id*. at ¶55, in part. Plaintiff alleges that Defendant Wolfe either imposed and/or permitted these conditions to exist with no "legitimate nonpunitive governmental objective" and was "deliberately indifferent to Plaintiff's health, safety, and other basic needs as described [in the First Amended Complaint], having been notified of, and having actual knowledge of, such conditions and deliberately taking no action to remedy them in a timely or appropriate manner." *Id*. at ¶¶57-58. Plaintiff asserts he is entitled to relief under the Fourteenth Amendment and 42 U.S.C. § 1983[1]

---

[1]A plaintiff may file a private cause of action pursuant to § 1983 for deprivations of

because he suffered a serious deprivation of basic human needs in violation of clearly established law. Plaintiff sues Defendant Wolfe in his personal capacity up to the insurance limits for compensatory and punitive damages.

In Count Three, Plaintiff also alleges a claim for intentional infliction of emotional distress (IIED). Plaintiff asserts the conduct of Defendant Wolfe and others in permitting these conditions to exist constitutes intentional, reckless, extreme, and outrageous conduct. As a proximate result, Plaintiff claims to have "suffer[ed] bodily injury, severe emotional distress, humiliation, embarrassment, mental distress, and loss of personal dignity." *Id*. at ¶89. Plaintiff seeks both compensatory and punitive damages for these acts.

## II.
## STANDARD OF REVIEW

Defendant Wolfe moves to dismiss both Counts One and Three against him under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).[2] In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court explained that courts must look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations

---

constitutional rights under color of state law. *Hafer v. Melo*, 502 U.S. 21, 27 (1991).

[2]There are three Counts in the First Amended Complaint. Count Two is a claim for deliberate indifference to a serious medical need. Defendant Wolfe is not directly named in Count Two.

"must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

## III.
## DISCUSSION

In his motion and accompanying memorandum, Defendant Wolfe argues the claims against him in his personal capacity should be dismissed for a variety of reasons, including pursuant to the Eighth Amendment. However, as Defendant Wolfe concedes in his Reply, Plaintiff was a pretrial detainee when his claims arose. Therefore, his challenge to the conditions of his confinement arises under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which directly applies to convicted inmates. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979).[3] As the Fourth Circuit has explained, "[w]hile a convicted prisoner is entitled to protection only against 'cruel and unusual' punishment, a pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)) (internal citations omitted). Nevertheless, courts often look to the Eighth Amendment when considering claims by pretrial detainees because they can be afforded no less protection than convicted prisoners. *See Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (stating that "[p]retrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth

---

[3] Additionally, Defendant Wolfe argues he cannot be held liable under a theory of respondeat superior. However, Plaintiff did not allege such a theory of liability so the Court need not address this argument.

Amendment. Thus, deliberate indifference to the serious medical needs of a pretrial detainee violates the due process clause.") (footnote and citations omitted).

In considering Defendant Wolfe's motion, the Court need not look long or hard to find relevant case law. The deplorable conditions in Pod A-5 have been the source of numerous recent inmate lawsuits. Just last fall, this Court considered motions to dismiss claims brought by Rodney Salmons, one of nineteen prisoners at the facility who filed a joint action complaining about the conditions in the Pod. *Salmons v. W. Reg'l Jail Auth.*, No. 3:18-1447, 2019 WL 5616916 (S.D. W. Va. Oct. 30, 2019).[4]

In *Salmons*, the Court recognized that the Eighth Amendment requires prison officials "to provide 'humane conditions of confinement[.]'" *Id.* at *5 (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Specifically, officials must make certain inmates are given "'adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Farmer*, 511 U.S. at 832). Not every hardship an inmate may experience, however, implicates the Eighth Amendment. "'[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

To set forth a *prima facie* case under the Eighth Amendment, "'a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison

---

[4]Although filed as a joint Complaint, separate civil actions were opened for each individual plaintiff. *Id*. at *1.

conditions on the part of prison officials.'" *Id*. (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotations omitted)). Under the first prong of this test, a court must decide "'whether the deprivation of the basic human need was *objectively* sufficiently serious[.]'" *Id*. (quoting *Strickler*, 989 F.2d at 1379; emphasis in *Strickler*). A plaintiff must allege more than living conditions that are unpleasant and uncomfortable as "[o]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding the conditions of confinement[.]" *Id*. (internal quotation marks and citation omitted). To show such an extreme deprivation of constitutional magnitude, "a prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Id*. (internal quotation marks and citation omitted). If the Court finds that a plaintiff has not met this objective test, it need not address "whether Defendants acted with an intent sufficient to satisfy the Eighth Amendment's state-of-mind requirement" under the second prong. *Id*. (internal quotation marks, brackets, footnote, and citation omitted). However, if a plaintiff meets the objective standard, the Court then must proceed to decide "'whether *subjectively* the officials acted with a sufficiently culpable state of mind.'" *Id*. (quoting *Strickler*, 989 F.2d at 1379; emphasis in *Strickler*).

In applying these criteria to the facts before it, the Court found that, despite alleging the Pod was unsanitary and without adequate procedures and cleaning supplies, the plaintiff did not indicate how he personally was impacted by the conditions or explain any harm he suffered as a result. *Id*. at *6.[5] As held by other courts in this District, "the mere smell or presence of human

---

[5]As the plaintiff was *pro se*, the Court liberally interpreted the complaint. However, the

waste is not sufficiently serious to constitute a violation of the Eighth Amendment." *Id*. (citations omitted). Similarly, the Eighth Amendment is not violated when there is a temporary denial of hygiene items and toiletries. *Id*. (citations omitted). Although the Court acknowledged that a denial of recreation may constitute cruel and unusual punishment under the Eighth Amendment, the denial must be "complete and prolonged," and the plaintiff did not allege how long he was denied recreational opportunities. *Id*. at *7 (citations omitted). Thus, the Court could not find a constitutional violation based upon his allegations. Likewise, although a denial of medical care may raise an Eighth Amendment claim when it "involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain," the plaintiff did not allege any injury or illness in his case. *Id.* (internal quotation marks and citations omitted). Therefore, the plaintiff failed to allege a sufficient constitutional claim for a denial of medical care, and the Court dismissed the complaint. *Id*.

Very recently, however, the Court reached a different result with respect to some of the claims brought by the estate of Bradley Siders. *Jeffers v. W. Va. Div. of Corrs. and Rehab.*, No. 3:19-0462, 2020 WL 521851 (S.D. W. Va. Jan. 31, 2020). Mr. Siders entered the facility as a pretrial detainee during the early afternoon of March 1, 2017. Mr. Siders had significant mental health issues, and he told a psychologist at the facility that he recently had used drugs. 2020 WL 521851 at *1-2. Mr. Siders had needle marks on his arms, and he exhibited unusual and concerning behavior. Ultimately, Mr. Siders was placed in Pod A under protective custody. *Id*. at *2.

---

plaintiff was not mentioned anywhere on the complaint other than in the style. *Id*. at *1, 5.

Tragically, only one day after he entered the facility, Mr. Siders was found unresponsive on his cell floor in a pool of water. *Id*. at *1. The medical examiner ruled the death was caused by "excited delirium due to methamphetamine intoxication and schizophrenia." *Id*. (internal quotation marks and citation omitted).

Amongst the claims brought by Mr. Siders' estate was that two of the correctional officers were deliberately indifferent to his medical needs. *Id*. at *5. Comparable to the analysis in *Salmons*, the Court stated that to allege a claim of deliberate indifference to a serious medical need there is both an objective and subjective test. Specifically, "a plaintiff must demonstrate (1) a deprivation of the plaintiff's rights by the defendant that is, objectively, sufficiently serious and (2) that the defendant's state of mind was one of deliberate indifference to inmate health and safety." *Id*. (internal quotation marks and citations omitted).

In applying this test to the facts alleged, the Court had no difficulty finding the first prong was satisfied, as it was alleged that Mr. Siders' died because he was denied "the minimal civilized measure of life's necessities." *Id*. at *6 (internal quotation marks and citation omitted). Turning to the subjective intent element of the second prong, the Court explained in more detail that a plaintiff must show "a defendant 'actually knew of and disregarded a substantial risk of serious injury to the detainee.'" *Id*. at *5 (quoting *Young*, 238 F.3d at 575-76. This test requires a plaintiff to demonstrate more than "an officer *should* have recognized a risk[.]" *Id*. (emphasis original). It requires the plaintiff to show the officer actually perceived the risk. *Id*. (citation omitted). In other words, "an officer must have been subjectively aware that his actions were inappropriate in light of the risk to inmate safety." *Id*. at *5 (internal quotation marks and citations

omitted). Additionally, while deliberate indifference is a high standard, it can be inferred when an officer fails to respond to the known medical needs of an inmate. *Id*. at *6. As the plaintiff in *Jeffers* alleged specific instances demonstrating knowledge of substantial risk and a failure to respond to that risk, the Court found the estate met its burden. *Id*.

As here, the plaintiff in *Jeffers* also alleged a claim for IIED based upon "outrageous conduct not to be tolerated by a reasonable person in a civilized society." *Id*. (internal quotation marks and citation omitted). To prevail on a claim for IIED, the West Virginia Supreme Court has stated a plaintiff must establish four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Labs., Inc*., 504 S.E.2d 419 (W. Va. 1998). The West Virginia Supreme Court further explained that the court's role is to evaluate the claim and determine whether the conduct alleged can reasonably be considered outrageous, while it is for a jury to decide "whether the conduct is in fact outrageous." Syl. Pt. 4, *Travis*. Demonstrating that conduct is outrageous is subject to a high standard, and "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go *beyond all possible bounds of decency*, and to be regarded *as atrocious*, and *utterly intolerable in a civilized community*." *Keyes v. Keyes*, 392 S.E.2d 693, 696 (W. Va. 1990) (internal quotation marks and citation omitted; emphasis added in *Keyes*); *see also Pegg v. Herrnberger*, 845 F.3d 112, 122 (4th Cir. 2017) (stating "[i]t is difficult to overstate the high burden of proof required [under West Virginia law] to sustain a tort claim for

intentional infliction of emotional distress/outrage"). To decide whether this standard is met, the court's responsibility is to conduct "a highly fact-specific inquiry into particular allegations made against particular defendants and determine whether a plaintiff has alleged conduct that may reasonably be regarded as meeting this high standard." *Jeffers*, 2020 WL 521851, at *7. Considering this standard in *Jeffers*, the Court denied a motion by the correctional officers to dismiss the plaintiff's IIED claim because the plaintiff's allegations were sufficient to maintain the claim.[6] *Id*. at *9.

In this case, Defendant Wolfe moves to dismiss Plaintiff's claims against him related to the conditions of his confinement and for IIED. Upon review, the Court finds the factual allegations of this case are much more closely aligned with *Jeffers* than with the allegations made in *Salmons*. First, as to the conditions of confinement, the Court has no difficulty finding Plaintiff has established a *prima facie* case. Here, Plaintiff alleges more than the mere presence of unsanitary conditions and a lack of hygiene items. Plaintiff assets that, despite being known to be immunocompromised, he was forced to sit, stand, and sleep in the pool of contaminated water on the cement floor of an overcrowded cell with no bed or blanket and only a smock to wear. As a result of these deplorable conditions, Plaintiff claims he developed a life-threatening infection to

---

[6] It was alleged in *Jeffers* that one of the correctional officers, among other things, turned on the intercom system so he could ignore Mr. Siders' pleas for help and take a nap. *Id*. at *6. The plaintiff also claimed that the other correctional officer knew Mr. Siders' was at substantial risk of harm, but he laughed about Mr. Siders' hallucinations and excessive water consumption. *Id*. at *9. The Court also denied dismissing the claim against a nurse practitioner who declined to see Mr. Siders and her employer because there was insufficient evidence "to rule as a matter of law that a reasonable factfinder could not conclude that [the nurse practitioner's] conduct meets each element of an IIED claim." *Id*. at *8-9. On the other hand, the Court did dismiss the IIED claims asserted against some other medical providers where the allegations were insufficient to support an IIED claim. *Id*. at *8.

an insect bite.[7] Although Plaintiff's leg was red, swollen, and got worse by the day, he further alleges his requests for medical attention went unaddressed and there was no procedure for him to file a "sick call slip" or a grievance. By the time he was a transferred out of the Pod, Plaintiff claims he was so ill that he was transported to a local hospital where he remained for over a month and underwent multiple surgeries.

Specifically, with respect to Defendant Wolfe, Plaintiff contends that he was "notified of, and [had] actual knowledge of," the conditions in the Pod, but he was "deliberately indifferent to Plaintiff's health, safety, and other basic needs" and "deliberately [took] no action to remedy [the conditions] in a timely or appropriate manner." *First Am. Compl.* at ¶58.[8] Plaintiff further asserts Defendant Wolfe "imposed and/or permitted these conditions despite these conditions not being reasonably related to a legitimate nonpunitive governmental objective." *Id.* at ¶57. Moreover, as Superintendent of the facility, Plaintiff claims Defendant Wolfe was legally

---

[7]Defendant Wolfe asserts in his Reply brief that "Plaintiff does not allege that any of these conditions directly caused him harm—his injury was from a spider bite." *Reply Mem. of Law in Supp. of Def. Kim Wolfe's Mot. to Dis. Pl.'s First Am. Compl.*, at 8, ECF No. 57. The Court disagrees. On the very first page of the First Amended Complaint, Plaintiff states he "suffers from permanent injury to his right leg as a result of the inhumane conditions at the facility and failure to timely provide health care." *First Am. Compl.* at ¶1.

[8]In the First Amended Complaint, Plaintiff states that, shortly after he was hospitalized, the Governor of West Virginia declared a state of emergency on December 31, 2017, due to overcrowding and understaffing at numerous regional jails. *Id*. at ¶13. Plaintiff also quoted from a newspaper article written on August 11, 2018, in which Defendant Wolfe discussed overcrowding and understaffing at the facility. *Id*. at ¶14. In the article, Defendant Wolfe stated the average population at the facility earlier that year was 825 to 850 inmates, but the facility only was designed to hold approximately 575 inmates. The facility also was down 30 correctional officers. Hessler, Courtney, "Wolfe Dismissed as Superintendent at Western Regional Jail," The Herald Dispatch (Aug. 11, 2018), https://www.herald-dispatch.com/news/wolfe-dismissed-as-superintendent-at-western-regional-jail/article_bc647649-8586-5a97-ab21-922d2a54cea4.html (last accessed on Mar. 10, 2020).

obligated to ensure that the conditions of confinement for pretrial detainees, like himself, did not violate clearly established constitutional rights. *Id*. at ¶5. Nevertheless, Plaintiff asserts Defendant Wolfe failed to meet this obligation, and the appalling conditions he described in the First Amended Complaint demonstrate Defendant Wolfe deprived him of the minimal civilized measure of life's necessities, which resulted in his pain and suffering. In looking at the totality of the allegations, the Court finds the facts alleged by Plaintiff are sufficient to survive Defendant Wolfe's Motion to Dismiss.

Likewise, the Court finds Plaintiff has sufficiently alleged a claim for IIED under *Travis*. The conditions and resulting injury Plaintiff describe clearly extend "*beyond all possible bounds of decency*, and to be regarded *as atrocious*, and *utterly intolerable in a civilized community*." *Keyes*, 392 S.E.2d at 696 (internal quotation marks and citation omitted; emphasis added in *Keyes*). This case is not one in which Plaintiff merely alleged the conditions in the Pod were unpleasant and uncomfortable. Instead, he alleges he was put in an overcrowded cell and forced to sit, stand, and sleep in a pool of contaminated and noxious standing water, which resulted in a serious infection following an insect bite, that went untreated for days despite his pleas for medical assistance. Plaintiff alleges that Defendant Wolfe either intentionally or recklessly allowed these conditions to exist when "such conduct was reasonably certain to cause [Plaintiff] severe emotional distress as well as physical harm" and, in fact, did cause him such harm. *First Am. Compl.* at ¶¶87-90. Additionally, the Court also finds the emotional distress Plaintiff experienced from his ordeal can be viewed as one that "was so severe that no reasonable person could not be expected to endure it." Syl. Pt. 3, in part, *Travis*. Thus, as in *Jeffers*, the Court finds Plaintiff's allegations of IIED are sufficient to survive a motion to dismiss.

Lastly, Defendant Wolfe argues the claims against him should be dismissed because he is entitled to qualified immunity. This defense also was raised by the correctional officers in *Jeffers*. In *Jeffers*, the Court explained that, under the standard for qualified immunity, government officials generally are shielded from civil liability "'unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct.'" *Id*. at *6 (brackets added in *Jeffers*; quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). For both factors, a court must apply an objective test, rather than look to the subjective intent of the governmental official. *Id*. (citation omitted). Applying this test, the Court in *Jeffers* easily found the plaintiff's allegation that Mr. Siders was deprived adequate medical care raised a violation of a constitutional right under the first step. With respect to the second step, the Court also found "'[a] prisoner's right to adequate medical care and freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and this Circuit since at least 1976 and, thus, was clearly established at the time of the events in question.'" *Id*. at *7 (quoting *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016)). Therefore, the Court concluded that the plaintiff's allegations were sufficient and denied the defendants' claim of qualified immunity. *Id*.

In applying this standard to the facts to this case, the Court reaches a similar result. The alleged facts, taken in the light most favorable to Plaintiff, set forth violations of Plaintiff's constitutional rights under the Fourteenth Amendment and deliberate indifference on the part of Defendant Wolfe. Additionally, when Plaintiff was held at the facility in 2017, it was clearly established that pretrial detainees were entitled to the minimal civilized measure of life's necessities,[9] which Plaintiff alleges he was not provided. In fact, Plaintiff argues that, during the

---

[9]*Farmer*, 511 U.S. at 822, 835 (discussing that prisoners are entitled to the minimum of

time period he was held, West Virginia regulations specifically entitled him "to (1) a bed above floor level; (2) a clean mattress, sheets, pillow, and blankets; (3) floors that are 'clean, dry and free of hazardous substances;' (4) sufficient cleaning equipment to maintain cells in clean condition; and (5) personal hygiene products, including soap, toothpaste, [and] toothbrushes." *Pl.'s Resp. in Opp. to Def. Wolfe's Mot. to Dismiss*, at 15, ECF No. 55 (citing and quoting W. Va. C.S.R. §§ 95-1-8.6.d, -8.11.b, -10.6, -10.7, & -10.10).[10] Thus, Plaintiff maintains there can be no doubt that Defendant Wolfe knew the facility was violating clearly established law. Moreover, Plaintiff claims that, as the conditions were not related to any legitimate governmental purpose, they were punitive and in violation of his right to be free from punishment as a pretrial detainee. For purposes of a motion to dismiss, the Court agrees with Plaintiff and, therefore, denies Defendant's Wolfe's claim of qualified immunity.

### IV.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court finds Plaintiff may proceed on his claims against Defendant Wolfe and **DENIES** the Motion to Dismiss with respect to the claims made against him. ECF No. 58. Additionally, as the parties stipulated to a voluntary dismissal of Defendant Wood's claims and Plaintiff's claims for injunctive relief, the Court **DENIES** those claims **AS MOOT**.

---

life's necessities).

[10]It appears that, after the events in this case occurred, this Series of Legislative Rules was repealed effective February 11, 2019.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: March 13, 2020

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE