IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

RONNIE LEE HAMMONDS,

        Plaintiff,

v.                      CIVIL ACTION NO. 3:18-1377

KIM WOLFE, former Superintendent of Western Regional
Jail and Correctional Facility;
PRIMECARE MEDICAL OF WEST VIRGINIA, INC.;
SUSIE CHRISTIAN, LPN, Employee of PrimeCare;
ANGELA NICHOLSON, FNP, Employee of PrimeCare;
MICHELLE CARR, Employee of PrimeCare
JOHN/JANE DOE CORRECTIONAL OFFICERS,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion for Summary Judgment by Defendant Kim Wolfe, former Interim Administrator of what now is referred to as the Western Regional Jail and Correctional Facility (WRJCF).[1] ECF No. 164. Plaintiff Ronnie Lee Hammonds has responded in opposition. Upon review, the Court **DISMISSES** Plaintiff's claim for intentional infliction of emotional distress, **DISMISSES** the John/Jane Doe Correctional Officers, **RESERVES** for further consideration Defendant Wolfe's motion with respect to causation, and **DENIES** the remainder of the motion.

---

[1] At the time Defendant Wolfe was the Administrator, the facility was known just as the Western Regional Jail.

I.
FACTUAL BACKGROUND

In his Second Amended Complaint, Plaintiff alleges two causes of action against Defendant Wolfe. ECF No. 128. First, Plaintiff asserts a claim under 42 U.S.C. § 1983, alleging that Defendant Wolfe was deliberately indifferent to his health and safety while he was a pretrial detainee at the WRJCF, in violation of the Fourteenth Amendment to the Constitution. *Sec. Am. Compl*. ¶¶66-78 (Count I), ECF No. 128. Second, Plaintiff asserts a claim for intentional infliction of emotional distress (IIED) under West Virginia law. *Id*. at 94-99 (Count III). In his Response, Plaintiff states that he is voluntarily dismissing his IIED claim. *Pl.'s Resp.* at 10 n.6, ECF No. 166. Accordingly, the Court deems the claim **DISMISSED** and **DENIES AS MOOT** Defendant Wolfe's motion with regard to the IIED claim. Defendant Wolfe also moves for "dismissal" of Plaintiff's claims against "John/Jane Doe Correctional Officers" as discovery is complete and none of these officers have been identified or served. The Court agrees and **DISMISSES** the John/Jane Doe Correctional Officers from this action. *See generally Attkisson v. Holder*, 925 F.3d 606, 627-28 (4th Cir. 2019) (affirming the district court's dismissal of the Doe defendants where the plaintiffs failed to establish good cause for lack of service under Rule 4(m) of the Federal Rules of Civil Procedure). Therefore, the only remaining issue before the Court is whether Plaintiff's claim of deliberate indifference in Count I can proceed.

In support of his claim of deliberate indifference, Plaintiff asserts he was held as a pretrial detainee at the WRJCF in August and September of 2017. It is undisputed that Plaintiff has a complicated and significant medical history. At the time of his admission, Plaintiff had

AIDS,[2] a genetic heart condition known as Wolfe-Parkinson-White syndrome, a pacemaker, a seizure disorder, Hepatitis C, anxiety, and depression. Plaintiff also has a history of Enterococcus faecalis infective endocarditis, Methicillin-resistant Staphylococcus aureus (MRSA), deep vein thrombosis, and pulmonary embolism. The policies of the medical provider at the facility, co-Defendant PrimeCare,[3] referred to Plaintiff as "a Special Needs patient," who required close medical supervision.

As relevant here, Plaintiff claims that he was not provided his necessary medications and, consequently, he had several episodes of Tachycardia. During his fourth episode, Plaintiff states he had a verbal altercation with PrimeCare staff, and he made a comment about staying in his cell and dying the next time. As a result, Plaintiff was placed on suicide watch and moved to Pod A-5 on September 9, 2017. Individuals on suicide watch are observed by an officer every fifteen minutes, and their observations are documented in a log.

It is undisputed that Pod A-5 was severely overcrowded, and Plaintiff was placed in a one-person cell with two other men. As Plaintiff was on suicide watch, he was given a lightweight smock to wear and was not allowed to have a mattress or bedding. The cell had one concrete slab that was designed to serve as a bed for one person. As there were two other men in the cell and Plaintiff was not permitted to have bedding or a mattress, he was forced to sleep on the concrete floor.

---

[2]Plaintiff represents that his T-Cell count has improved, and he currently is considered HIV+, as opposed to having active AIDS.

[3]Defendant PrimeCare and the named PrimeCare employees have not moved for summary judgment.

In addition to those on suicide watch, Pod A-5 houses individuals with mental illness and "troublemakers" moved there for punitive segregation. It is not disputed that some of these individuals would spread feces on the walls of their cells, overflow their toilets, and pop sprinkler heads, causing water contaminated with feces, mold, blood, and other impurities to cascade down the walls of the cells on the second tier of the Pod and infiltrate the cells on the first tier, where Plaintiff was housed. Plaintiff explained:

> The inmates have sprinklers inside of each cell, sprinkler caps, and when they would be aggravated or irritated because the conditions that we were in or they weren't given something properly, they would go up and pop the caps of these things, and the water then would fill that cell, go down onto the bottom tier, and it would flood underneath all the cells down there on the bottom tier, and then it would flood the water out, which was usually mixed with fecal matter, urine, fire retardant, and it would come inside the cell. You could smell it in the water.

*Dep. of Pl.*, at 57, ECF No. 166-2. Both Plaintiff and one of his cellmates, Samuel Stout, asked for the cell to be cleaned, but to no avail.[4] Plaintiff maintains that, as the cell was very cramped, he had no choice but to stand, sit, and sleep in the unsanitary pool of water on the cement floor. He states his gown was wet from being in the noxious water, and it left him unbearably cold. He also said there was mold on the walls and ceilings of all the cells. One individual housed in Pod A-5 at the same time as Plaintiff described the conditions as "[h]orrible. . . . probably the nastiest area that I've ever lived in my life, and I've been homeless most of my life. . . . [T]here was mold growing on the – on the walls, bugs everywhere. There was constantly water floating around on the floor, feces caked on the walls, blood caked on the walls." *Dep. of Jacob Spradlin*, at 8-9 (June 18, 2020), ECF No. 166-6.

---

[4]Individuals on suicide watch are not permitted to have cleaning supplies themselves. Instead, employees of the facility are responsible to clean the cells.

Plaintiff was housed in the cell for approximately one week. On September 13, 2017, Plaintiff filed a grievance. *Grievance of Pl.* (Sept. 13, 2017), ECF No. 164-7. In his grievance, Plaintiff expressed his frustration about being put on suicide watch, and he said he felt it was being used to punish him. He also complained about not being given his heart medication and having to sit in water for two days and freezing. *Id*. The grievance was "Accepted by Major Aldridge on 9/20/2017," but at that point Plaintiff was hospitalized. *Id*.

Around the same time he filed the grievance, Plaintiff asserts he noticed what he believed to be a spider bite on his right knee either the morning of September 12 or 13. The site became infected and, on September 14, Plaintiff was prescribed clindamycin, an antibiotic. However, no follow up appointments were scheduled.[5] Over the next few days, the infection grew worse. Plaintiff states he asked for medical help, but he was not evaluated by medical personnel again while in Pod A-5. On September 15, Plaintiff was taken off suicide watch and moved to another pod. Plaintiff states that, once he was moved, he filed a paper grievance seeking medical care for his leg, but he said he does not know what happened to it after it was submitted.

On September 16, Plaintiff's condition continued to worsen. Shortly before midnight, Plaintiff was taken to the medical unit at the facility. At that point, Plaintiff was extremely sick, and he was transported to a local hospital. At the hospital, Plaintiff was feverish and hypotensive. He also was treated for sepsis, and a culture from his knee was positive for

---

[5] Plaintiff's infectious disease expert, Judith Feinberg M.D., states in her report that, "[w]hile clindamycin is a commonly used option . . . many [community acquired] MRSA strains have inducible clindamycin resistance, which means that administration of clindamycin will result in resistant infection." *Prelim. Rep. of Judith Feinberg, M.D.*, at 5 (Aug. 13, 2020), ECF No. 166-8.

MRSA. Plaintiff underwent two surgeries and remained hospitalized for a month. He now experiences chronic problems caused from the infection. On a form completed by a PrimeCare employee regarding how Plaintiff's hospitalization could have been prevented, the employee said that Plaintiff should not have been lying in standing water in the cell.

## II.
## DISCUSSION

Defendant Wolfe asserts he is entitled to summary judgment on Plaintiff's claim of deliberate indifference against him for a number of reasons. Defendant Wolfe contends that Plaintiff's claim fails both the objective and subjective prongs under § 1983. With regard to the objective test, Defendant Wolfe argues the deprivations Plaintiff experienced were not sufficiently serious to objectively show a constitutional violation. On the subjective front, Defendant Wolfe states he was unaware of the conditions of Plaintiff's cell and Plaintiff has not produced any evidence to show he had subjective knowledge of the conditions. Therefore, without showing subjective knowledge, Defendant Wolfe insists Plaintiff cannot establish a § 1983 claim against him. Additionally, Defendant Wolfe maintains he is entitled to qualified immunity and Plaintiff cannot show any act or omission he did caused the injury.

As Defendant Wolfe seeks summary judgment, he must show that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, it will draw any permissible inference from the underlying facts in the light most favorable to Plaintiff. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to Plaintiff, he nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate if Plaintiff cannot make a showing sufficient to establish an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). He must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his position. *Anderson*, 477 U.S. at 252.

In considering the arguments made by Defendant Wolfe, the Court first addresses his argument that Plaintiff has failed to set forth sufficient evidence of deliberate indifference. The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. This Amendment forbids "more than physically barbarous punishments." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). It also forbids a correctional official from being deliberately indifferent "to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Although the Constitution does not require a prison to be comfortable, prison conditions cannot traverse the line between uncomfortable to inhumane. *Id*. at 832. The Eighth Amendment requires prison officials to provide inmates with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" *Id*. (citations omitted).

To prove a constitutional violation, the Supreme Court in *Farmer* held there must be a showing (1) the alleged deprivation "must be, objectively, 'sufficiently serious'" and (2) a prison official acted with a "sufficiently culpable state of mind." *Id*. at 834 (internal quotation

marks and citations omitted)). To establish deliberate indifference, the Supreme Court explained that the official must have been subjectively aware of the risk. More specifically, the Supreme Court held:

> that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id*. at 837.

Additionally, with respect to pretrial detention, as the case here, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (footnote omitted). Not every restriction imposed upon a pretrial detainee, however, is a "'punishment' in the constitutional sense[.]" *Id*. at 537. Inherent to detention is a loss of freedom, privacy, and a certain level of comfort, and those things, without more, do not fail constitutional muster. *Id*. To determine whether particular conditions constitute "punishment," a court must consider a number of factors. In *Bell*, the Supreme Court explained these factors include:

> "Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment-retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions."

*Id*. at 537-38 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 169 (1963) (footnotes omitted)).

As this Court recently stated in *Baxley v. Jividen*, Civ. Act. No. 3:18-1526, 2020 WL 7489760 (Dec. 21, 2020), the Supreme Court has provided little guidance since *Bell* "as to the standards that govern the conditions of pretrial detention beyond noting that due process requires arrestees be given protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" 2020 WL 7489760, at *16 (quoting *City of Revere v. Mass Gen. Hosp.*, 463 U.S. 239, 244 (1983)). *Baxley* also recognized, however, that the Supreme Court's 2015 decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), casts doubt on whether a pretrial detainee must satisfy the subjective prong for deliberate indifference under *Farmer*. *Id*. (citation omitted).

In *Kingsley*, the Supreme Court held that the plaintiff-detainee, who made a claim under the Fourteenth Amendment of excessive force against several jail officers, only had to show "that the force purposely or knowingly used against him was objectively unreasonable." 576 U.S. at 396-97. The plaintiff-detainee did not have to offer evidence of the officers' subjective intent. *Id*. at 400-02. Likewise, as in *Baxley*, Plaintiff here argues that *Kingsley*'s rejection of the subjective prong in an excessive force case under the Fourteenth Amendment applies equally to a pretrial detainee's claim of deliberate indifference. Therefore, Plaintiff insists that, pursuant to *Kingsley*, he only must show sufficient evidence under the objective prong, and he need not demonstrate Defendant Wolfe's subjective knowledge. Defendant Wolfe disagrees and argues that both prongs still apply.

In *Baxley*, the Court recognized that the circuits have split on whether *Kingsley* applies to all § 1983 claims brought under the Fourteenth Amendment or applies only to excessive force cases. 2020 WL 7489760, at *16 (collecting cases). The Fourth Circuit has not resolved the issue and, ultimately, this Court did not have to decide the issue in *Baxley* as the plaintiffs had sufficiently alleged "a claim under the Eighth Amendment deliberate indifference standard." *Id*. at *17.[6] After this Court issued its decision in *Baxley*, the Fourth Circuit discussed *Kingsley* in the context of a pretrial-detention claim of deliberate indifference in *Mays v. Sprinkle*, 992 F.3d 295 (4th Cir. 2021).

In *Mays,* David Mays was arrested for public intoxication and held in a county jail cell while he was still under the influence of a number of powerful drugs. *Id*. at 298. A few hours after he was detained, Mr. Mays was found dead in his jail cell. Thereafter, Mr. Mays' estate filed a suit under the Eighth and Fourteenth Amendment for a failure to provide medical care. *Id*. at 299. The district court granted the officers' motion to dismiss, finding insufficient facts to state a claim for deliberate indifference and determining the officers were shielded by qualified immunity. *Id*. On appeal, the plaintiff argued that, as the decedent was a pretrial detainee, *Kingsley* only requires that he meet the objective prong of *Farmer*. *Id*. at 300. Upon consideration, the Fourth Circuit declined to directly decide the issue, finding it made no difference in light of an analysis of qualified immunity. *Id*. at 300-01.

---

[6]Although not ruling on the issue, the Court stated it did find logic in extending *Kingsley* to pretrial detainees' deliberate indifference claims. *Id*.

As explained by the Fourth Circuit, "'[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Id*. at 301 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). A clearly established right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id*. (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up in *Mays*)). The right must be defined with precision, and not generality, by what the law was "*at the time* of the conduct in question." *Id*. (italics original; citations omitted). While the plaintiff bears the burden of showing the occurrence of a constitutional violation, the defendant "bear[s] the burden of showing that the violation was not clearly established, and [he or she is] therefore entitled to qualified immunity." *Id*. at 302 n5.

In applying this test to the facts presented in *Mays*, the Fourth Circuit found that, at the time of death, it was clearly established that government officials could not be deliberately indifferent to a detainee's serious medical needs. *Id*. at 301. Furthermore, as the Fourth Circuit has never decided whether *Kingsley* extends beyond the realm of excessive force to deliberate indifference claims, the Court held the law "require[d] both an objectively serious medical condition and subjective knowledge by a prison official of both the serious medical condition and the excessive risk posed by the official's action or inaction." *Id*. (internal quotation marks and citation omitted). Therefore, the Fourth Circuit stated that, irrespective of *Kingsley*, the plaintiff had to plausibly allege both objective and subjective elements in order to survive qualified immunity. *Id*. at 301-02. If the plaintiff cleared that hurdle, the Fourth Circuit reasoned the plaintiff

also would have alleged a plausible Fourteenth Amendment claim, regardless of *Kingsley's* impact on the standard. *Id*. at 302. In other words, "no matter if the deliberate-indifference standard for pretrial detainees continues to include a subjective component, the qualified-immunity determination resolves whether Mays's allegations establish a plausible claim." *Id*. After reviewing the facts alleged by the plaintiff, the Fourth Circuit found the plaintiff had set forth sufficient facts under both the objective and subjective standards to withstand the defendants' motion to dismiss.

As in *Mays*, Defendant Wolfe also has raised qualified immunity in this case. Although here the Court must consider the summary judgment standard rather than the plausibility of Plaintiff's claim, *Mays* remains instructive. Pursuant to *Mays*, Plaintiff must show sufficient evidence on both the objective and subjective front to survive qualified immunity. If he does, Plaintiff also will survive Defendant Wolfe's substantive challenge to his deliberate indifference claim.

In considering the evidence before this Court and drawing any permissible inferences in the light most favorable to Plaintiff, the Court has no difficulty finding Plaintiff has set forth sufficient evidence that his conditions of confinement violated a clearly established constitutional right that a reasonable official, under an objective standard, would have known at the time of his confinement. Here, Plaintiff has presented evidence of inhumane living conditions that persisted over days if not weeks. Plaintiff was placed in an overcrowded cell with two other individuals. As the cell was designed for one person, it only had one cement slab for a bed. Due to his suicide watch status, Plaintiff only was given a thin smock to wear, and he had no blanket or

mat. Therefore, Plaintiff was forced to sit, stand, and sleep in a pool of noxious water on the cement floor. The water was contaminated with feces, mold, blood, and other harmful materials that streamed into the cell from the upper tier of the pod. In essence, Plaintiff asserts he was sleeping, sitting, and standing in, at best, raw sewage. Plaintiff's evidence shows there was mold growing throughout the pod and in his cell and there were bugs. Plaintiff states his smock was wet from the sewage water and he was freezing cold

Defendant Wolfe attempts to isolate each of these conditions and insists Plaintiff's discomfort is simply not enough to meet the constitutional threshold. However, it is the totality of the circumstances [7] that may reasonably be objectively viewed as a sufficiently "serious deprivation of a basic human need,"[8] pushing this case beyond the constitutional limit. The Court has no doubt that authorities at the facility have legitimate reasons to take special precautions with detainees on suicide watch and to limit their access to certain items they may use to hurt themselves. The Court does not take issue with the fact Plaintiff was provided a special smock and was denied things like a blanket and cleaning supplies. However, those interests cannot be used as an excuse to justify keeping a pretrial detainee sleeping, sitting, and standing in contaminated standing water in a moldy, overcrowded cell, in a sopping wet gown. Particularly with respect to this Plaintiff, who had serious, chronic medical problems that made him highly susceptible to infection and disease, the Court finds that any reasonable official at the time of the event should have determined these conditions offend the Constitution. *See generally Taylor v. Riojas*, 141 S.

---

[7] *See Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992) ("This Court has repeatedly stated that when reviewing Eighth Amendment claims, courts must consider the totality of the circumstances." (Citation omitted)).

[8] *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993) (citation omitted).

Ct. 52, 54 (Nov. 2, 2020) (per curiam) (finding any reasonable officer should have known it was unconstitutional to house an inmate in shockingly unsanitary conditions with "'massive amounts' of feces" and a "frigidly cold cell" in which the plaintiff was without a bed and slept naked in sewage).

Turning next to the subjective element, Defendant Wolfe insists there is no evidence he was subjectively aware of Plaintiff's specific circumstances. However, Plaintiff has presented evidence that either Defendant Wolfe did know or was willfully blind trying to escape liability. *See Makdessi v. Fields*, 789 F.3d 126, 129 (4th Cir. 2015) ("Prison officials may not simply bury their heads in the sand and thereby skirt liability."). Specifically, Plaintiff has evidence to show Defendant Wolfe knew the facility was overcrowded, he read grievances on a daily basis, he knew there were occasions when sprinkler heads would be popped and toilets flooded, he was aware that some individuals would smear feces on the walls and throw feces and urine at others, and there were occasional problems with mold at the facility. Additionally, Plaintiff argues his evidence shows there was widespread knowledge of the problems at the facility and, if Defendant Wolfe did not know about the conditions, it only could be explained by willful ignorance on his part.

In drawing any permissible inference from this evidence in the light most favorable to Plaintiff, the Court finds it is sufficient to raise a question of fact as to Defendant Wolfe's subjective knowledge. Therefore, as Plaintiff has presented evidence to satisfy both the objective and subjective requirements to defeat qualified immunity, the Court **DENIES** Defendant Wolfe's motion for summary judgment on qualified immunity grounds. *See Delli-Veneri v. W. Va. Div. of*

*Corr. & Rehab.,* No. 2:19-cv-00689, 2021 WL 1201670, at *8 (S.D.W. Va. Mar. 30, 2021) ("Because the Defendant's subjective knowledge is a disputed question of fact, qualified immunity is not appropriate."). Additionally, having found Plaintiff has presented sufficient evidence to survive qualified immunity, the Court likewise finds pursuant to *Mays* that Plaintiff's claim of deliberate indifference survives summary judgment irrespective of whether *Kingsley* changes the legal standard for a pretrial detainee's claim for deliberate indifference.

Defendant Wolfe further argues that Plaintiff has failed to allege or show he has suffered a physical injury as the result of any act or omission on Defendant Wolfe's part. Therefore, Defendant Wolfe asserts Plaintiff is precluded from recovering damages from him. For the time being, the Court reserves judgment on this issue.

### III.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court **DISMISSES** Plaintiff's claim for intentional infliction of emotional distress, **DISMISSES** the John/Jane Doe Correctional Officers, **RESERVES** decision on Defendant Wolfe's argument as to causation, and **DENIES** the remainder of his motion.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 5, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE